UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a corporation existing under
the laws of the United States,

       Plaintiff,

v.

UNIVERSITY HOUSING LEFORGE, LLC, a
Delaware limited liability company,
       Defendant.
_____/

Case No. 2:10-cv-10782
Hon. George Caram Steeh
Magistrate Judge Michael Hluchaniak

## ORDER APPOINTING RECEIVER AND
## GRANTING PRELIMINARY INJUNCTION

Plaintiff filed a verified complaint in this action seeking the appointment of a receiver over certain real property located in the City of Ypsilanti, Washtenaw County, Michigan. This Court having reviewed plaintiff's verified complaint and motion for the appointment of a receiver and preliminary injunction, any responses by defendant to plaintiff's verified complaint and motion, and being otherwise duly advised in the premises,

IT IS ORDERED THAT:

1.    Terry B. Schwartz of Dover Realty Advisors, LLC ("Receiver") is appointed as the Receiver over the "Mortgaged Property," which means:

    (A)    The multifamily real estate development commonly known as the River's Edge Apartments located at 799 Green Road, City of Ypsilanti, Washtenaw County, Michigan ("Real Estate") on which plaintiff holds Mortgages and which is more fully described in the Mortgages, copies of which are attached to plaintiff's verified complaint in this matter and incorporated by reference, together with all buildings, structures and improvements on the Real Estate;

(B) All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with, the operation of the Real Estate;

(C) All of the collateral and assets of defendant, as described in the Mortgages attached to plaintiff's verified complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Real Estate;

(D) All the rent, royalties, issues, revenues, income, profits and other benefits of the Real Estate and the facilities thereon under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Real Estate ("the Rents") all as more fully described in the Mortgages attached to plaintiff's verified complaint;

(E) All permits, licenses and other contracts pertaining to the Real Estate and the operations of the Real Estate;

(F) All books, records, accounts or documents which in any way relate to the Real Estate, the Rents, or the operations of the Real Estate, and copies of all documents defendant is legally obligated to retain except those that are covered by the attorney client privilege;

(G) All other property, estate, right, title and interest as described in the Mortgages and the other Loan Documents attached to and referred to in plaintiff's verified complaint; and

(H) All bank accounts maintained by defendant concerning the Mortgaged Property, including any operating accounts and/or security deposit accounts.

2. The Receiver may contract Paragon Properties, LLC ("Property Manager"), a Michigan management company, managed by Dover Realty Advisors, LLC, to manage the day-to-day operations of the Mortgaged Property under the supervision of the Receiver.

3. Defendant and its officers, directors, employees, partners, trustees, agents, members, managers, representatives, and/or any entity controlled by defendant and/or anyone who receives notice of this Order are directed to cooperate with the Receiver and his Property Manager in the transition of the management of the Mortgaged Property and shall make immediately available to the Receiver and his Property Manager all of their records concerning

the Mortgaged Property, to the extent that defendant maintains such items, so that the Receiver may adequately account for any revenue collected or owing as of the date and after the date the Receiver is appointed, including, but not limited to, all:

(A) Leases including communication/correspondence files;

(B) A current rent-roll as well as tenant and family member contact names and telephone numbers;

(C) A current aged accounts receivable/delinquency report;

(D) The occupant ledgers;

(E) Documents identifying and summarizing all pending litigation;

(F) All operating licenses;

(G) Documents pertaining to all pending new leases/renewals;

(H) All existing service contracts;

(I) All bids pending for contractor work;

(J) To the extent that defendant has employees, copies of all on site employee payroll records and employee files and applications to include number of employees on health or dental program by coverage (single, single plus, or family coverage), gender and age of each employee;

(K) All documents, books, records and computer files and records concerning the rents, profits, finances, issues, and operation and management of the Mortgaged Property, including, but not limited to, accounts with any financial institutions;

(L) Such other records pertaining to the management of the Mortgaged Property as may be reasonably requested by the Receiver and which are in defendant's possession or custody or subject to its control;

(M) Defendant's IRS tax identification number; and

(N) An accounting of all security deposits.

4. The release of employee payroll records and files, described in paragraph 2(J), above, to the Receiver and the Receiver's Property Manager are authorized by this Order.

5. Immediately upon entry of this Order, the Receiver has the authority to operate the Mortgaged Property.

6. Defendant (and any person and/or entity receiving notice of this Order) shall also surrender to the Receiver all monies that it currently or later possesses (and/or that is or becomes subject to its control) from revenue, profits, Rents and/or income collected from the operation of the Mortgaged Property, including any money held in accounts maintained by defendant at any financial institution that has originated from the Mortgaged Property.

7. Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized to take any actions the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure and safeguard the Mortgaged Property, including, but not limited to, all cash on hand, bank accounts, credit card receipts, bank deposits, other cash collateral as well as all Mortgaged Property of the defendant, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the receivership property, including taking possession of and copying, if necessary: all books, records, notes, memoranda, loan documents, deeds, bills of sale, canceled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to defendant that relate in any way to the defendant's business practices or finances concerning the Mortgaged Property. Without limiting the generality of the foregoing, the Receiver shall:

    (A) Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible assets of the

4

Detroit_981023_2

Mortgaged Property and all licenses used in connection with the operation of the Mortgaged Property;

(B) Collect all revenues, profits, income, Rents, and issues from the Mortgaged Property;

(C) To allow the plaintiff, defendant, and their counsel access to the Mortgage Property at reasonable times to inspect the Mortgaged Property and all books and records thereof;

(D) To collect any unpaid or delinquent rents, revenues, issues and profits regardless of when accrued, and to prosecute eviction proceedings;

(E) To enforce termination or approve any contracts and/or agreements regarding the Mortgage Property, subject to plaintiff's approval;

(F) To retain, hire, or discharge on-site employees;

(G) To establish pay rates of on-site employees and to pay all withholding taxes regarding such employees that accrued after the entry of this Order;

(H) Manage, maintain and operate the Mortgaged Property, including without limitation, the payment from funds received as Receiver of all of the following (collectively the "Operating Expenses"): (i) all ordinary and necessary operating expenses arising from the operation by the Receiver of the Mortgaged Property for the period after entry of this Order until expiration or termination of the receivership; (ii) all current real and personal property taxes and assessments (and delinquent taxes, with the prior written consent of Plaintiff); and (iii) all premiums of hazard, liability and other insurance policies upon the Mortgaged Property for term of the receivership; and

(I) To access any accounts maintained by defendant at any financial institution with funds that originated from the Mortgaged Property.

8. The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Mortgaged Property. The Receiver shall receive a monthly management fee of 5.5% of the gross collections per month, with a minimum of $5,000 per month.

9. All existing insurance relating to the operation and management of the Mortgaged Property, including but not limited to fire, extended coverage, property damage, general and professional liability, and workers' compensation shall remain in effect, and defendant and third

parties with notice of this Order shall cooperate with the Receiver in its efforts regarding such insurance. The Receiver and his Property Manager shall be named as an additional insured on all such policies.

10. Should the Receiver not have sufficient funds to pay all of the Operating Expenses for the Mortgaged Property, plaintiff may, in its sole discretion (without being under any obligation to do so), loan funds to the Receiver to pay such Operating Expenses as plaintiff may elect to have paid. The repayment of all such funds loaned by plaintiff shall be secured by the Mortgaged Property and under the Mortgage. If such funds are loaned by plaintiff subsequent to plaintiff's mortgage foreclosure sale, such amounts advanced may be added to plaintiff's credit bid as and to the extent permitted by applicable law.

11. Neither plaintiff, the Receiver nor the Receiver's Property Manager shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of defendant or the Mortgaged Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of defendant, and any liability to which defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Mortgaged Property and operation of defendant's business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither the plaintiff nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, the Receiver may (upon plaintiff's written consent) pay, from funds collected from operation of the Mortgaged Property, Pre-Receivership Liabilities that were incurred within the 30 days before the entry of this Order in the ordinary course of business and that are not payable to defendant or defendant's insiders,

affiliates, related companies, parent companies, owners or those entities with common ownership and/or control.

12. The Receiver shall file with this Court and electronically serve on the parties who have filed appearances a monthly accounting of all receipts and disbursements concerning the performance of its duties under this Order. Said accountings shall be due beginning 20 days following the end of the first complete month after the Receiver assumes control of the Mortgaged Property and every 30 days thereafter, and a final accounting within 30 days after termination of the receivership.

13. The Receiver shall have the power to enter into, modify, extend, terminate, and/or enforce leases and other contracts in connection with the Mortgaged Property in the ordinary course of business; provided, however, in so doing neither the Receiver nor the Receiver's Property Manager shall not concede, settle, compromise or pay any pre-Receivership Liabilities without plaintiff's consent.

14. If the net proceeds of any mortgage foreclosure sale of the Mortgaged Property are insufficient to pay in full the indebtedness of defendant to plaintiff, any excess Rents, income and profits after payment of operating expenses shall be paid on a monthly basis (including during any redemption period) to plaintiff to be applied to such deficiency. If there is no deficiency or if there remains an excess of proceeds after payment in full of any deficiency, the remaining excess shall be paid under further order of this Court.

15. The Receiver and the Receiver's Property Manager, and their employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them

relating to the Receiver's duties under this Order, except for claims due to gross negligence, gross or willful misconduct, malicious acts, and/or the failure to comply with this Court's orders.

16. The Receiver and the Receiver's Property Manager are authorized, in its discretion, to operate the Mortgaged Property under any and all existing agreements that are currently in place between the defendant and any third-party.

17. This Court shall retain jurisdiction over this action, the Mortgaged Property and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice. Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Mortgaged Property upon the earliest of: (a) expiration of the statutory redemption period for the mortgage foreclosure sale for such Mortgage Property; (b) stipulation of the plaintiff and defendant; or (c) further order of this Court. The Receiver may, from time to time, upon notice to all parties who have appeared in this action, apply to this Court for further and other instructions and for further powers necessary to enable Receiver to fulfill its duties under this Order.

18. Until further Order of this Court, defendant, its agents, members, managers, and employees, and all other persons with notice of this Order (other than plaintiff, the Receiver, and the Receiver's Property Manager), are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of or otherwise diminishing or causing harm to any of the Mortgaged Property, or any part of the Mortgaged Property, all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances, and goods of every nature, and all articles of personal property located in, or on, or used, or intended to be used in connection with the Mortgaged Property, all proceeds from the operations of the Mortgaged Property, including

all revenue, income and profits, and all documents relating in any way to the defendant's business practices or finances or the Mortgaged Property. No security is required prior to issuance of this injunction.

19. Except by leave of this Court and except as to plaintiff's claims against defendant contained in the verified complaint and with respect to plaintiff's right to foreclose the mortgages on the Mortgaged Property, during the pendency of the receivership, defendant, and all other persons, creditors and entities (other than plaintiff) are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of defendant, the Receiver, receivership assets, or the Receiver's duly authorized agent (including the Receiver's Property Manager) acting in their capacities as such, including but not limited to, the following actions:

- (A) Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

- (B) Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of defendant that relates in any way to the Mortgage Property, or attempting to foreclose, forfeit, alter or terminate any of defendant's interest in the Mortgage Property, whether such acts are part of a judicial proceeding or otherwise;

- (C) Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Mortgage Property; and

- (D) Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Mortgage Property.

This paragraph does not prevent defendant from commencing litigation that does not relate to the Mortgaged Property. This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

20. The Court finds that plaintiff in seeking to obtain a receiver is engaged in a workout activity, as that term is defined by M.C.L.A. §324.20101a, and its actions in seeking appointment of a receiver are intended to protect the value and marketability of its collateral. Further, plaintiff's actions in seeking the appointment of a receiver represent the exercise of remedies available to a creditor under Michigan law for the breach of a loan agreement, within the scope of CERCLA, 42 U.S.C. §9601(a)(F)(iv)(VII) and do not amount to participation in management as that term is defined in 42 U.S.C. §9601(E) and (F) of CERCLA.

s/George Caram Steeh
Hon. George Caram Steeh
United States District Court Judge

Dated: April 1, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 1, 2010 by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk